IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROWLAND MARCUS ANDRADE and ABTC CORP., | ) ) ) |
| *Movants*, | ) ) |
| vs. | ) )  Case No. 4:24-MC-00248 |
| UNITED STATES OF DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, | ) ) ) ) ) |
| *Respondent*, | ) ) |

**UNITED STATES' RESPONSE TO MOVANTS'
MOTION TO QUASH AND FOR ORDER OF PROTECTION**

This filing responds to the motion to quash summonses and for order of protection (the Motion) filed by Rowland Marcus Andrade and ABTC Corp. (Movants) on February 12, 2024.

**Summary of Argument**

Citing the Right to Financial Privacy Act (RFPA), the Motion (Dkt. No. 1 at 5) seeks to quash four administrative summonses issued by the Internal Revenue Service onto two banks: (1) a summons issued on May 19, 2023, to each of Chase Bank and Bank of America (the May Summonses); and (2) a summons issued on September 19, 2023 to each of Chase Bank and Bank of America (the September Summonses).[1] The Summonses seek records relevant to an IRS examination of Movant ABTC Corp. pursuant to Title 31 of the United States Code. The Motion argues that Movants received no notice for any of the Summonses and, in passing, that the Summonses are not relevant to any legitimate law

---

[1] As an initial matter, and as explained later in this filing, the September Summonses replaced and superseded the May Summonses. The Government thus seeks no enforcement of the May Summonses.

1

enforcement inquiry. The Motion also seeks an order of protection, asking the Court to impose a broad range of duties onto the IRS. The Motion has no merit for three reasons:

> (1) The IRS mailed the September Summonses (superseding the May Summonses) and a customer notice of it to Movants' "last known address" as required by the RFPA. The Government thus "substantially complied" with the notice requirement of the RFPA;
>
> (2) The IRS issued the September Summonses for a legitimate law enforcement inquiry, and records the Summonses seek are relevant to that inquiry; and
>
> (3) Because Movants filed the Motion many months after the IRS mailed the September Summonses and its customer notice, the Motion is time barred.

The Court should find the Government substantially complied with the RFPA, deny the Motion as untimely, and order enforcement of the September Summonses. The Court should also deny the Movants' request for an order of protection.

**I.     Statement of Facts**

The Government substantially complied with the notice requirement of the RFPA for the September Summonses. Yet the gravamen of the Movants' argument is that the IRS provided no notice of the Summonses. As the Summonses all attribute the same address to the Movants—a particular office "suite" located in Houston, Texas—some background on that address is necessary.

A.   The 222 Suite

IRS Revenue Agent (RA) Andrea James first learned of Movants' address at issue in 2021. Ex. 1 ¶ 6, 7. That year, RA James issued a summons (unrelated to the Summonses here) onto Rowland Marcus Andrade "as member of ABTC Corp." *Id.* ¶ 7. A different IRS RA eventually "taped" that summons onto the door at 7324 Southwest Fwy, Ste 222, Houston, Texas 77074 (the 222 Suite). *Id.* This other RA had recently visited the building in which the 222 Suite is located and there learned that ABTC Corp. was located at the 222 Suite. *Id.* Less than two weeks later, lawyer Christopher Ray contacted RA James by phone on behalf of both Andrade and ABTC Corp and in response to the above-referenced summons. *Id.* ¶ 8. Mr. Ray soon also provided to Ms. James a Form 2848 Power of

2

Attorney, which included the same address for ABTC Corp. as the 222 Suite except it included suite number 325 instead of 222 and showed a different zip code: 77424. *Id.* ¶ 8, 9; Ex. 3.

The 77424 code later proved incorrect as it is not assigned to any geographic region anywhere. Ex. 1 ¶ 9. Given that faulty zip code and considering that delivery of a summons to the 222 Suite had successfully prompted response from a lawyer on behalf of both Movants, RA James considered the 222 Suite an appropriate address for each of the Movants. *Id.*

### B. The May Summonses

Nothing in the record suggests that by April 2023, RA James should have somehow believed the 222 Suite was not the address for either Movant. The Motion, indeed, seems to concede that at some point, one or both Movants used the 222 Suite. *See* Dkt. No. 1 at 4 ("[N]either Mr. Andrade nor ABTC Corp. had used that business address [the 222 Suite on the May 2023 Summons] in years."); *see also* Dkt. No. 1-1 at 2 (Declaration of Rowland Marcus Andrade) ("[T]he address on Attachment I of the sommonses [sic] is for an office that ABTC Corp. has not used for aroung [sic] two years.").

On April 28, 2023, RA James obtained approval to issue the May Summonses. Ex. 1 ¶ 10. The IRS uses the Certified Automated Mailing System (CAMs) to send out items like summonses and notices. Ex. 1 ¶ 11. CAMs requires use of certain envelopes. *Id.* While RA James tried to locate those envelopes, she also prepared for labor: RA James delivered birth on May 1, 2023 and began parental leave, which continued until August 14, 2023. *Id.* ¶ 11, 12. Although RA James scrambled to locate the envelopes to mail the May Summonses and notice of it via CAMs, she was unable to do so prior to her son's birth. *Id.* During RA James' leave, a different RA issued the May Summonses onto the banks. *Id.* ¶ 13. But when RA James returned from leave, she learned no notice had issued for the May Summonses. *Id.* ¶ 14. One of the banks (Chase) apparently later sent the May Summonses to Movants.

3

C. <u>The July 2023 Letter to RA James from Movants' Counsel</u>

By the time RA James returned from parental leave in August 2023, Movants' Counsel had sent RA James a letter (the July 2023 Letter) saying that, indeed, Movants received no notice of the May Summonses. *Id.*; Dkt. No. 1-5 at 1. The Letter further asked RA James to "quarantine" any documents received via the May Summonses. Ex. 1 ¶ 14; Dkt. No. 1-5 at 1. It also enclosed one of the May Summons that Chase had apparently sent to the Movants and "Attachment 1" to the Summons. Ex. 1 ¶ 10; Dkt. No. 1-5 at 4 (May Summonses); *id.* at 7 (Attachment 1). Attachment 1 prominently displays the 222 Suite as an address for both Movants—a clear indication that the IRS believed the 222 Suite to be an address appropriate for both Movants. Dkt. No. 1-5 at 7; Ex. 1 ¶ 10.

Yet the Letter makes no comment on the 222 Suite. It does not, for example, say the 222 Suite is incorrect, belongs to only one Movant, or is no longer used by any Movant. Nor is there any indication in the record that Movants or their Counsel told RA James the 222 Suite is incorrect. And to the best of RA James knowledge, no one has ever told her the 222 Suite is an incorrect address for Movants. Ex. 1 ¶ 19. So when RA James returned from leave and read the Letter, she believed Movants received no notice of the May Summons not because of any wrong address—but because the IRS failed to mail the notice. *Id.* ¶ 16.

D. <u>RA James Quarantines Documents Received via May Summonses and Issues September Summonses</u>

Just 3 days after returning from leave, on August 17, 2023, RA James apparently left a voicemail on Movants' Counsel's phone, indicating she "would get with the person who had mailed the [May] summonses" and get back to Movants' Counsel, presumably about the July 2023 Letter. Dkt. No. 1 at 3; Dkt. No. 1-3 ¶ 2. Around the same time, RA James "quarantined" documents obtained via the May Summonses, as requested by Movants' Counsel in the Letter. Dkt. No. 1-5 at 1; Ex. 1 ¶ 17. Specifically, the RA who had issued the May Summonses onto the banks sent any files received via those Summonses to RA James. *Id.* RA James stored those files in a sealed envelope in a file cabinet

4

but never reviewed them. *Id.* ¶ 17, 18, 25; *see also* Dkt. No. 1-11 at 2 (reflecting a "post-it" note placed on May Summonses eventually mailed to Movants' Counsel in February 2024 which says "records received from these summons were not reviewed – AJ"); Dkt. No. 1-11 at 21 (reflecting, in contrast, a post-it note for the September Summonses stating records were reviewed ).

In September 2023, RA James obtained approval to issue new summonses to replace and cure the May Summonses' notice deficiency: the September Summonses. Ex. 1 ¶ 20.; Ex. 4. The September Summonses are addressed to the same banks and seek the same documents for the same examination as reflected in the May Summonses. Ex. 1 ¶ 20, 21. And this time, RA James issued the September Summonses and mailed out notice of them on September 19, 2023 to Movants' last known address: the 222 Suite. *Id.* ¶ 22; Ex. 4; Ex.5. The notice also contained language verbatim required by the RFPA. Ex. 1 ¶ 20; *compare* 12. U.S.C. § 3405(2) *with* Ex. 4 at 13, 28. The US Postal Service confirmed delivery of the September Summonses to the 222 Suite on September 26, 2023. Ex. 1 ¶ 22; Ex. 6.

      E.   <u>Events Post September Summonses</u>

Nothing in the record indicates Movants or their Counsel had any communication with RA James following issuance and mailing of the September Summonses until December 2023. Movants' Counsel followed up on his July 2023 Letter on December 18, 2023. Dkt. No. 1 at 3; Dkt. No. 1-3 ¶ 2. And Movants' Counsel and RA James then exchanged various emails and forms, apparently none of which expressed the 222 suite was an incorrect address for any Movant when the Summonses were issued. Dkt. No. 1 at 3; Dkt. No. 1-3 ¶ 2. On February 2, 2024, RA James sent the May and September Summonses to Movants' Counsel. Dkt. No. 1 at 3; Dkt. No. 1-3 ¶ 2; Dkt. No. 1-10 at 1.

This action soon followed.

## II. Applicable Law[2]

"The RFPA provides only three grounds on which the district court may quash a [summons]: (1) the agency's inquiry is not a legitimate law enforcement inquiry or (2) the records requested are not relevant to the agency's inquiry or (3) the agency has not substantially complied with the RFPA." *Sandsend Financial Consultants Ltd. v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989).

### A. Legitimate Law Enforcement Inquiry and Relevancy to Such Inquiry

The "RFPA provides that a federal government entity may subpoena [or summons[3]] a bank to obtain financial records about a bank's customer only if 'there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry." *Nicksolat v. U.S. Dept. Transp.*, 277 F. Supp. 122, 124 (D.D.C. 2017) (citing 12. U.S.C. § 3405)). "Law enforcement inquiry" is broadly defined as any "lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." *Id.*

An "administrative agency with statutory authority to engage in investigative and accusatory duties may investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Porrazzo v. United States Securities and Exchange Commission*, No. MC 18-00106-LEK-KSC, 2018 WL 1598655, at *3 (D. Haw. Apr. 2, 2018) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 442 (1950) (cleaned up)). A declaration of a government official attesting to the commencement of investigation "is sufficient to establish that the law enforcement inquiry is legitimate, and records are relevant." *Id.* (cleaned up). "The question is not whether the records are relevant but whether the government has a reasonable belief that they are." *Federal Trade Commission v.*

---

[2] To the extent the RFPA applies to the Title 31 Summonses at issue here, the Government has substantially complied with the RFPA, without conceding that the RFPA applies to the Summonses.

[3] Although the *Nicksolat* case dealt with a subpoena, the RFPA—codified in 12 U.S.C. § 3405—applies to both a government-issued "administrative subpoena or summons." 12 U.S.C. § 3405.

6

*Jones*, No. SACV 17-58, 2023 WL 7739901, at *1 (C.D. Cal. Oct. 27, 2023). Relevance in this sense is laxed: the "RFPA requires only that financial information be relevant to a legitimate law enforcement inquiry and not relevant in a narrow, evidentiary sense." *United States v. Wilson*, 571 F. Supp. 1417, 142 (S.D.N.Y. 1983). Thus, although the Government must "show something beyond mere curiosity in order to justify [a summons that is challenged under the RFPA], it does not have to show a lot." *Galloway v. U.S. Dept. Transp.*, No. 1:19-mc-0101, 2019 WL 4479970, at *4 (N.D. Ohio Sept. 18, 2019).

B. <u>Compliance with the RFPA</u>

Compliance with the RFPA includes abiding by its notice requirement. "Before obtaining customer financial records" pursuant to a summons issued onto a bank, "the government must serve the subpoena [or summons] on the [bank's] customer (or mail it to her last known address) along with a notice that 'shall state with reasonable specificity the nature of the law enforcement inquiry.'" *Id.* (citing 12. U.S.C. § 3405(2)). The statute specifically requires the Government to mail the summons to the customer whose records are sought "on or before the date on which the subpoena or summons was served on the financial institution." 12. U.S.C. § 3405(2). However, "the RFPA requires substantial, not strict, compliance by the government agency issuing the administrative [summons.]" *Walton v. U.S. Postal Service*, No. 5:13-cv-302 (CAR), 2013 WL 5522837, at *2 (M.D. Ga. Oct. 3, 2013).

C. <u>Applicable Procedure and Permissible Evidence</u>

A customer may move to quash a summons under the RFPA within 14-days of the summons' mailing to the customer. *Nicksolat*, 277 F. Supp. 122 at 125. With the motion, the customer must file a sworn statement that, among other things, states the "reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice or that there has not been substantial compliance with" the RFPA. *Id.* (cleaned up).

By statute, the Court must deny a motion to quash and order enforcement of the summons if the Government shows there is a "demonstrable reason to believe that the law enforcement inquiry

is legitimate and a reasonable belief that the records sought are relevant to that inquiry." *Nicksolat*, 277 F. Supp. 122 at 125. Conversely, the Court must grant the motion if there is no such demonstrable reason or if the "government has not substantially complied with the procedural requirements of the RFPA." *Id.* (cleaned up). In responding to a motion to quash, the Government "may rely on affidavits or other summary-judgment type evidence." *Nicksolat*, 277 F. Supp. 122 at 125.

### III.  Argument

#### A. The Government substantially complied with the notice requirement of the RFPA by mailing the September Summonses to the Movants' Last Known Address

The only procedural requirement of the RFPA that Movants challenge is the RFPA's notice requirement (*See* Dkt. No. 1). The Government has substantially complied with that requirement.

RA James mailed the September Summonses and a customer notice of it to the 222 Suite on September 19, 2023. Ex. 1 ¶ 20, 22; Ex. 4–6. The September Summonses made clear the law enforcement inquiry pursuant to which the IRS issued the Summonses: "an investigation for the purpose of civil enforcement of the Currency and Foreign Transactions Reporting Act.[4]" Ex. 1 ¶ 20; Ex. 4 at 7, 22. It also provided a citation to the United States Code sections under which the IRS is conducting the investigation: 31 U.S.C. § 5311. Ex. 4 at 7, 22. And the notice repeated that information and included verbatim what is required by the RFPA. *Compare* 12. U.S.C. § 3405 *with* Ex. 4 at 13, 28.

The 222 Suite is also the address last known by RA James to have prompted a response by one of Movants' Counsel—on behalf of *both* Movants. Ex. 1 ¶ 22, 9. RA James believed mailing the September Summonses to the 222 Suite would prompt similar correspondence and provide notice to Movants. *Id.* ¶ 23. And there is nothing in the record to suggest that RA James acted unreasonably in mailing the September Summonses to the 222 Suite. Especially considering she acted under the

---

[4] The Currency and Foreign Transactions Reporting Act is also known as the Bank Secrecy Act, discussed in section III(b) of this filing. *See, e.g.*, *United States S.E.C. v. Alpine Securities*, 982 F.3d 68, 74 (2d Cir. 2020) (equating the Currency and Foreign Transactions Reporting Act of 1970 to the Bank Secrecy Act).

8

impression that Movants lacked notice of the May Summonses not because that address was incorrect but because the IRS mailed no notice. *Id.* ¶ 16. And Movants' Counsel never told RA James the 222 Suite is inappropriate. Nor is there anything else to suggest RA James somehow should have believed the 222 Suite is inappropriate. And if the 222 Suite is inappropriate and Movants knew it, they could have told that to RA James in the July 2023 Letter or other correspondences referenced in the Motion. Movants undermine RA James' use of the 222 Suite but provide no evidence that they ever furnished the IRS any supposed correct address which would have allowed RA James to send notice there.

In the end, the text of the RFPA requires mailing notice to a customer's "last known" address. Not the most recent address. And not even the most "correct" address. Movants provide no authority otherwise. "Absent persuasive indications to the contrary," the Fifth Circuit "presume[s] Congress says what it means and means what it says." *Hamilton v. Dallas Cty.*, 79 F. 4th 494, 501 (5th Cir. 2023). And here, the 222 Suite is the *address last known* for Movants by RA James. If Movants knew a different address, the record reflects many opportunities in which they could have conveyed that to RA James.

B. <u>RA James Issued the September Summonses for a Legitimate Law Enforcement Inquiry and the September Summonses Seek Records Relevant to That Inquiry</u>

As a preliminary matter, Movants provide no argument that the September Summonses seeks records somehow not relevant to a law enforcement inquiry. In the Motion, they say that it is "not clear" to Movant Andrade how the totality of records sought by the September Summonses are relevant. *See* Dkt No. 1 at 5 (emphasizing confusion about "how *all* of the records responsive to the summonses" could "*all* be relevant to any legitimate law enforcement inquiry" (emphasis added)). But Movants never specify which records are irrelevant and why. And Movant Andrade's declaration is no better given he mimics the language in the Motion (*See* Dkt. No. 1-1 at 1). Movant Andrade's deficient declaration alone provides the Court with reason to deny the Motion on this ground: the customers (here the Movants) have provided no sworn statement explaining their "reasons for believing that the

9

financial records sought *are not* relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice." *Nicksolat*, 277 F. Supp. 122 at 125 (emphasis added).

That aside, the RA James issued the September Summonses pursuant to a lawful law enforcement inquiry, and the Summonses seeks records relevant to that inquiry.

      i.      *The Bank Secrecy Act*

RA James issued the September Summons under 31 U.S.C. § 5311—otherwise known as the "Bank Secrecy Act (BSA)." Ex. 1 ¶ 20; Ex. 4. Through the BSA, Congress "authorized the Secretary of Treasury to promulgate appropriate regulations" to "require certain reports or records where they have a high usefulness in criminal tax, or regularly investigations or proceedings." *United States v. Herron*, 825 F.2d 50, 57 (5th Cir. 1987) (citing 31 U.S.C. § 5311)). The BSA applies in criminal and civil contexts. *In re Various Grand Jury Subpoenas*, 924 F. Supp. 2d 549, 553 (S.D.N.Y. 2013) (cleaned up); *see United States v. Zhong H. Chen*, 815 F. 3d 72, 76 (1st Cir. 2016) ("[r]ooting out criminal activity was not Congress's only interest, and the justifications for the [BSA's] reporting and recordkeeping requirements extend far beyond the criminal context," as shown by BSA's text and legislative history).

      ii.      *The Reporting and Recording-keeping Requirements of the BSA*

The BSA requires certain United States "persons" to "keep records" and "file reports" of certain "transactions" or relationships with "foreign financial agenc[ies]." *Chen*, 815 F. 3d at 76; *Bedrosian v. United States*, 912 F.3d 144,147 (3rd Cir. 2018) (noting the BSA "instructs the Secretary of Treasury to prescribe rules that require persons to file an annual report identifying certain transactions or relations with foreign financial agencies." It also imposes "a number of record-keeping and inspection provisions." *In re Grand Jury Subpoena*, 696 F.3d 428,432 (5th Cir. 2012); *see Zhong H. Chen*, 815 F. 3d at 76 (articulating the record-keeping requirement of the BSA).

       *iii.*      *Virtual Currency and the BSA*

The medium of currency used in "transactions" or "relationships" subject to the BSA has evolved significantly over the past decade. Virtual currency has arrived.[5] And the BSA applies with equal force to digital money. *See Matter of Search of Multiple Email Accounts*, 585 F. Supp. 3d 1, 10 (D.D.C. 2022) (noting that for "purposes of the [BSA]," there "is no distinction between virtual currency and real currency."). Likewise, "virtual current[cy] exchanges[[6]] doing business in the United States are subject to the Bank Secrecy Act and must collect identifying information of their customers and verify their clients' identities, as well." *United States v. Dove*, No. 8:19-CR-33-CEH-CPT, 2021 WL 838737, at *2 (M.D. Fl. Mar. 5, 2021); *see United States v. Gratkowski*, 964 F.3d 307, 312 (5th Cir. 2020) ("Coinbase deals with virtual currency while traditional banks deal with physical currency. But both are subject to the Bank Secrecy Act as regulated financial institutions. Both keep records of customer identifies and currency transactions."). A virtual currency exchange is also a "money service business" subject to the BSA. *See United States v. 50.44 Bitcoins*, No. ELH-15-3692, 2016 WL 3049166, at *1 (D. Md. May 31, 2016) (noting an "administrator or exchanger of a virtual currency like Bitcoin is required to register as a Money Service Business"); *IRS*, MONEY SERV. BUSINESS (MSB) INFO. CTR, available at https://www.irs.gov/businesses/small-businesses-self-employed/money-services-business-msb-information-center (last updated October 2023) (noting the BSA "requires many financial institutions,

---

[5] For example, Bitcoin a "medium of exchange, method of payment and store of value." *United States v. Harmon*, 474 F. Supp. 76, 89 (D.D.C. 2020) (collecting cases and sources); *see* Internal Revenue Service, *IRS Virtual Currency Guidance Notice 2014-21*, 2014-16 I.R.B. 938 (2014) ("Virtual currency is a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value.").

[6] As one federal court observed, a "virtual currency exchange" allows for users to convert "conventional money" into "virtual currencies and vice versa." *United States v. Three Hundred Three Virtual Currency Accounts,* No. 20-CV-712 (DLF), 2021 WL 663190, at *1 (D.D.C. Feb. 19, 2021)

11

including money services businesses (MSB), to keep records and file reports on certain transactions to the U.S. Department of the Treasury's Financial Crimes Enforcement Network (FinCEN))."

> iv. *RA James Issued the September Summonses Pursuant to a Legitimate Law Enforcement Inquiry into Movant ABTC Corp. for Compliance with the BSA*

RA James has reason to believe that Movant ABTC. Corp. is virtual currency exchange or a "money service business" subject to the BSA. Ex. 1 ¶ 5. Indeed, Movant Andrade is named as a defendant in a separate case which seemingly involves cryptocurrency transactions, among other things. *See SEC v. NAC Foundation LLC*, 512 F. Supp. 3d 988, 992 (N.D. Cal. 2021). And 2019 and 2020 records filed with the Financial Crimes Enforcement Network (FinCEN) also reflect that ABTC Corp. is a money service business doing business as "AML Bitcoin." Ex. 1 ¶ 5; Ex. 2. Bitcoin is virtual currency. Ex. 1 ¶ 5*; supra* n. 5. And for similar reasons, RA James has reason to believe Andrade is an owner or administrator of ABTC Corp. Ex. 1 ¶ 5; Ex. 2. The FinCEN filings referenced above list "Marcus Andrade" as ABTC Corp.'s President and "compliance contact." Ex. 2 pp. 1, 4, 5, 8.

As such, as authorized by law, RA James is examining ABTC Corp. for compliance with the BSA. Ex. 1 ¶ 4. The IRS is authorized by statute to investigate potential violations of the BSA. *Herron*, 825 F.2d at 57. RA James' Title 31 examination thus falls into the broad definition of "law enforcement inquiry" under the RFPA. *See, e.g.*, *Porrazzo*, 2018 WL 1598655, at *3 (noting that an "administrative agency with statutory authority to engage in investigative and accusatory duties may investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not").

> v. *The September Summonses Seek Records Relevant to RA James' Examination*

Additionally, the records that RA James seeks are relevant to her examination of ABTC Corp.

The narrowly-tailored time period at issue in the September Summonses is May 1, 2020, to October 31, 2020. Ex. 4 at 1, 4. For that short period, the September Summonses seeks:

> All records pertaining to the following individuals and business entities whether held jointly or severally or as trustee or fiduciary as well as custodian, executor or guardian as well as any other entity in which these individuals or entities may have a financial interest:

12

- ABTC Corp
- Marcus Andrade

To include all accounts in which these individuals had signatory authority and/or the right of withdrawal.

Responsive records will provide RA James with information—such as, for instance, bank statements, signature cards, and other financial records—pertinent to Movant ABTC Corp.'s "transactions" and/or "relationships" at or arising from the summonee banks. Ex. 1 ¶ 26, 4. In turn, RA James may then use that information to determine whether ABTC Corp. is following the BSA's reporting and recordkeeping requirements, which is directly relevant to her Title 31 examination. *Id.*

And considering the fungibility of virtual currency, RA James must examine responsive records for any entity in which either Movant has a financial interest. This will allow RA James to examine the full scope of "transactions" or "relationships" attributed to ABTC Corp. *Id.* ¶ 27. To illustrate: either Movant may have during a relevant period converted virtual currency to cash and stored the cash in an account in the name of some other entity in which a Movant has a financial interest, unknown to RA James; that other entity may be a nominee of ABTC Corp., and those conversions may be in fact attributed to ABTC Corp. and involve a "transaction" subject to the BSA. *Id.* ¶ 27, 28. This connection is sufficient. *Sandsend Financial Consultants*, 878 F.2d at 882 ("Sandsend may have only a loose connection with Vision Banc. Its financial records, however, *touch on* a matter under investigation and, thus, are relevant to the FHLBB's examination." (emphasis added)); *see also Fed. Trade Comm'n v. Noland*, No. CV-20-00047-PHX-DWL, 2020 WL 7264593, at *2 (D. Ariz. Dec. 10, 2020) ("the standard for relevance under" the RFPA "is not stringent" and the Government need only show "a reasonable belief that the records sought are relevant to its inquiry.") (cleaned up)).

And Movants' apparent argument that the Summonses "seek personal records" of Movant Andrade has no bearing: Congress enacted the RFPA against the backdrop that "bank customers have no reasonable expectation of privacy" in "bank records of their accounts," and so the RFPA

13

"specifically provides" for "personal, private, and confidential" records so long as the Government meets the statutory requirements. *Noland*, 2020 WL 7264593, at *2 (citations omitted).

    C. <u>Because the Government has substantially complied with the RFPA, Movants' Motion to Quash is Untimely</u>

As explained in Section III(A), RA James mailed the September Summonses and a notice of it to Movants' last known address on September 19, 2023. Movants filed the Motion many months afterwards, which provides an additional reason for the Court to deny the Motion. *See, e.g.*, *Sandsend Financial Consultants Ltd. v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 881 n.6 (5th Cir. 1989) (noting that "under the RFPA, the party challenging the [summons] must file his motion to quash within . . . 14 days of the date of mailing the [summons]" and that "the untimely nature of a motion would, in most cases, provide an independent ground for denying the motion.").

    D. <u>The Court should deny Movants' Motion for Protective Order</u>

The Court should also deny Movants' request for protection (Dkt. No. 1 at 5) given that, as explained: (i) in issuing the September Summonses, and pursuant to a legitimate law enforcement inquiry, the Government substantially complied with the RFPA, so there is no reason for the Court to order any protection for those Summonses; and (2) the IRS no longer seeks records via the May Summonses and has already quarantined any documents received from the May Summonses.

**IV.   Conclusion**

For these reasons, the Court should:

1. Deny the Motion in its entirety and find the Government substantially complied with the RFPA by mailing the September Summonses to the 222 Suite, and further deny the Motion as untimely; and

2. Order enforcement of the September Summonses against Movants and find the Government issued the September Summonses pursuant to a legitimate law enforcement inquiry and that the September Summonses seeks records relevant to that inquiry.

*Dated*: March 5, 2024

                                        Respectfully submitted,

                                        **DAVID A. HUBBERT**
                                        Assistant Attorney General
                                        Department of Justice, Tax Division

                                        */s/ Eduardo R. Mendoza*
                                        Eduardo R. Mendoza
                                        Trial Attorney
                                        Texas State Bar No. 24096680
                                        S.D. Tex. ID 3838770
                                        U.S. Department of Justice, Tax Division
                                        717 N. Harwood, Suite 400
                                        Dallas, Texas 75201
                                        214.880.9735
                                        Eduardo.Mendoza@usdoj.gov
                                        *Attorney in-charge*

### Certificate of Service

I certify that on March 5, 2024, I electronically filed this document on the Court's CM/ECF system, which will automatically service a Notice of Electronic Filing on all attorneys of record.

                                                                                 */s/ Eduardo R. Mendoza*
                                                                                   Eduardo R. Mendoza

### Certificate of Word Count

Consistent with Rule 16(c) of the Honorable Drew B. Tipton's Court Procedures, I certify that this response is 4,902 words, excluding the case caption, signature block, and certificates.

                                                                                 */s/ Eduardo R. Mendoza*
                                                                                   Eduardo R. Mendoza