1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                      HOUSTON DIVISION

4   ROWLAND MARCUS ANDRADE,     §   CASE NO. 4:24-MC-248
    et al.                      §   HOUSTON, TX
5   VERSUS                      §   WEDNESDAY,
                                §   APRIL 3, 2024
6   IRS – SD TX                 §   2:12 PM TO 2:42 PM

7                      MOTION HEARING

8          BEFORE THE HONORABLE DREW B. TIPTON
               UNITED STATES MAGISTRATE JUDGE
9
                       APPEARANCES:
10

11      FOR THE PARTIES:            SEE NEXT PAGE

12      COURT REPORTER:             UNKNOWN

13      COURT CLERK:                UNKNOWN

14

15

16

17

18

19

20

21              TRANSCRIPTION SERVICE BY:

22              Veritext Legal Solutions
               330 Old Country Road, Suite 300
23                  Mineola, NY 11501
           Tel: 800-727-6396 ▼ www.veritext.com

24
     Proceedings recorded by electronic sound recording; transcript
25              produced by transcription service.

```
1                              APPEARANCES:

2   FOR THE PLAINTIFF:           PRATT FLACK LLP
                                 Paul Flack
3                                4306 Yoakum Boulevard
                                 Suite 500
4                                Houston, TX 77006
                                 713.705.3087
5

6   FOR THE DEFENDANTS:          U.S. DEPARTMENT OF JUSTICE
                                 Eduardo Mendoza
7                                Tax Division
                                 717 N. Harwood Street
8                                Suite 400
                                 Dallas, TX 75201
9                                214.880.9735

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                HOUSTON, TEXAS; WEDNESDAY, APRIL 3, 2024; 2:12 PM
 2                THE COURT:  Okay.
 3                CLERK:  Court calls miscellaneous action 4:24-248,
 4     Andrade et al v. IRS-SD TX.  May I have appearances by counsel?
 5                MR. MENDOZA:  Yes, Your Honor.  Good afternoon.
 6     Eduardo R. Mendoza, on behalf of the United States.
 7                MR. FLACK:  Paul Flack, on behalf of Marcus Andrade
 8     and Corp (indiscernible).
 9                THE COURT:  You're here for who?
10                MR. FLACK:  Marcus Andrade and ABTC Corp., the
11     movants.  Rowland Marcus Andrade.
12                THE COURT:  Okay.  All right.  And you're here for
13     the DOJ?
14                MR. MENDOZA:  Yes, Judge --
15                THE COURT:  Okay.
16                MR. MENDOZA:  -- from Dallas.
17                THE COURT:  For some reason, I had you all swapped.
18     I'm used to the Government sitting on that side.  Okay.  So
19     I've read the motion in response and the reply and the lengthy
20     attachments.  So, it is your motion.  You can go ahead.  What
21     exactly -- let me just, I guess, kind of cut to the chase.
22     What exactly are you looking for as far as relief is concerned?
23                MR. FLACK:  Well, we emailed over a proposed order.
24                THE COURT:  I see -- I've got this.
25                MR. FLACK:  And it's also set out, I believe, at the
```

1    end of our reply and the end of our notion, but essentially,

2    the things we're looking for are we'd like to know who they've

3    subpoenaed, who they've shared the records with.  We'd like

4    copies of whatever they've received.  And we'd like, you know,

5    attorney's fees and payment.

6          THE COURT:  So let me ask you this.  If everything --

7    if we didn't have all of the procedural, you know, kind of

8    timing issues and we were starting cold, you'd done this a

9    week, he filed his motion on time, there was no dispute, there

10   was no address dispute -- any of those kind of things, no

11   notice disputes -- what would you have done?  What would you

12   have provided?  Did you get a copy of the proposed order?

13         MR. MENDOZA:  Yes, Your Honor.  This morning, I did.

14         THE COURT:  Okay.  So, how many of those things would

15   have been -- would have happened kind of naturally if we didn't

16   have this background?

17         MR. MENDOZA:  Judge, I don't think a -- I mean, I

18   would object to a lot of these.  So I think the specific relief

19   that is allowed by the statute issue, the Right to Financial

20   Privacy Act, is embodied in a particular statute --  in the

21   Right to Financial Privacy Act, any particular section of that

22   statute, there's a section on relief.

23         None of the relief sought in the reply brief or in

24   the proposed order, I think, is allowed for that section.

25         THE COURT:  So, let's through them.  So I'm looking

1    at the first one.  IRS shall disclose to the movants all

2    summonses, subpoenas -- basically anybody you've asked for

3    document for.  Is that something that would typically not be

4    provided?  And if so, other than -- do you have authority for

5    the idea that the request is overbroad?

6                MR. MENDOZA:  I think their request, on its face, is

7    broad because, you know, we're here for --

8                THE COURT:  Overbroad or broad?

9                MR. MENDOZA:  I think it's overbroad, Judge, because

10    we're here, as the Court knows, on those four summonses.  And I

11    think this request for relief is talking about all summonses,

12    and I think it says all related entities.

13                THE COURT:  Well, I think it's asking you to identify

14    who else have you asked for stuff from?

15                MR. MENDOZA:  Correct.

16                THE COURT:  Abd so, are you suggesting that that's

17    like part of an investigation privilege or something?

18                MR. MENDOZA:  I mean --

19                THE COURT:  So I'm trying --

20                MR. MENDOZA:  I mean, it may be, Judge.  I just don't

21    know exactly what they're looking for, you know, when they say

22    all summonses.  I know --

23                THE COURT:  Well, anything that's related to Mr.

24    Andrade, I would assume.  I mean, basically, the way that I

25    interpreted the reading of all of this is that you may be

1   summonsing ABTC Corp., but it's really Andrade who feels like

2   he's the target.  And so, I think he's trying to figure out

3   what all you've asked for that relates to him.

4          My question is, these summons, I saw that you put in

5   there Rowland Marcus Andrade as member of ABTC Corp.  Is he the

6   target, or is the financial entities the target, or what?

7          MR. MENDOZA:  So, Mr. Andrade is --

8          THE COURT:  Is it Andrade or Andrade?

9          MR. ANDRADE:  Andrade.

10          MR. MENDOZA:  Andrade.

11          THE COURT:  Okay.

12          MR. MENDOZA:  I'm sorry about that.

13          THE COURT:  I was just making sure.

14          MR. MENDOZA:  He is not being investigated by Ms.

15   James.

16          THE COURT:  All right.  You're Ms. James?

17          MR. MENDOZA:  By the IRS.

18          THE COURT:  How are you doing?

19          MR. MENDOZA:  Yes.

20          THE COURT:  Okay.

21          MR. MENDOZA:  Agent James is here.  She is doing an

22   examination of the Bank Secrecy Act of the entity, not Mr.

23   Andrade.

24          THE COURT:  Okay.  So, have any documents that are

25   unrelated to ABTC Corp. been summonsed?

1          MR. MENDOZA:  Unrelated...?

2          THE COURT:  Are there anything that deal with him

3     individually?

4          MR. MENDOZA:  I don't know, Your Honor.  I'm happy to

5     put Ms. James on the stand and we can --

6          THE COURT:  Well, I  mean, we don't have to put her

7     on the stand.  You can just tell me -- represent to me in open

8     court.  So, what's going on?  Are we -- have we only sent

9     things to entities?  Or are we also seeking some of Mr.

10    Andrade's personal records or both, or what?

11         MS. JAMES:  The bank summonses in question were

12    submitted on behalf of ABTC Corp. and Mr. Andrade, Your Honor.

13         THE COURT:  So, him individually as well?

14         MS. JAMES:  On the summons, yes, pending the type of

15    examination I'm conducting.

16         THE COURT:  Okay.  All right.  So, let me just ask,

17    in the normal course of events, if notice had been provided, he

18    lawyers up and then contacts you and says, you know, I want the

19    right to object before these banks just provide you

20    information, which doesn't sound unreasonable to me.

21         MR. MENDOZA:  Right.

22         THE COURT:  I don't know if it's a legal issue or

23    not.  I just don't know.  And I'm going to ask for some

24    supplement briefing.  We're not going to rule today.  But one

25    of the questions I have is, do they have the right before

1  records are produced, to be able to assert objections and quash

2  it, or modify it or limit it ahead of time?  I just don't know

3  the answer to that question.  And so, that's why -- I mean,

4  that's really the biggest question I have is does he have that

5  right?  And if so, if you're sending these out, then he would

6  get notice.  I would assume that if he typically -- and it was

7  your expectation that he would have gotten notice before these

8  things had been produced?

9           MS. JAMES:  Correct.  Yes, Your Honor.

10          THE COURT:  Okay.  And that would be all summonses.

11 So, are there any other summonses that aren't identified here

12 that are related to him that have gone out that he doesn't know

13 about?

14          MR. MENDOZA:  No.

15          MS. JAMES:  That he doesn't know about?  No, Your

16 Honor.

17          THE COURT:  Okay.  So, that should take care of that

18 question.  You just heard there are no other summonses that he

19 doesn't know about that relate to Mr. Andrade.

20          MR. FLACK:  Okay.  So none other than the ones that

21 are attached to the pleadings here?

22          MR. MENDOZA:  There's one more that was previously --

23          MS. JAMES:  The summonses that were issued to him

24 prior to the bank summonses.

25          MR. MENDOZA:  And that's the one for which you hired

1    Mr. Ray, I believe.

2         MS. JAMES:  Ray, yes.

3         MR. MENDOZA:  Yeah.

4         MR. FLACK:  Okay.

5         THE COURT:  Okay.  So we've got the universe of

6    summonses.  So, what I what I need to -- what about getting

7    copies?  Again, I don't know what is permissible under the

8    statute.  I'm looking more for -- I'm less concerned about the

9    remedies, given the uniqueness of what happened.  I certainly

10   don't think that the IRS -- or behaved in bad faith or

11   negligently, or anything like that.  She went out on leave.  I

12   get all of that.

13        What I'm trying to do is put us as close as possible

14   to where we would have been if everything had happened timely

15   and noticed.  There was none of the procedural issues.  So, if

16   that had happened, would you typically give copies of the

17   records to the entity or company?

18        Is that somebody's phone?

19        MR. FLACK:  Yes, Your Honor.  I'm afraid it is.

20   (indiscernible)

21        THE COURT:  That's okay.  Can you kill that?

22        MR. FLACK:  (indiscernible) yeah.  I'll maybe just

23   turn it all the way off.  Can't stop it wringing on my wrist.

24        THE COURT:  Why don't we shut that down?

25        MR. FLACK:  I apologize, Your Honor.

1              THE COURT:  Okay.  So, do you remember my question?

2              MS. JAMES:  Could you repeat it, Your Honor?

3              THE COURT:  Yeah.  It's basically, do you typically

4    provide copies of what you receive from summonses?

5              MS. JAMES:  A bank summons, Your Honor, typically no.

6    Once you reach the bank summons portion of my examination, that

7    means I have been trying to get the records from the entity or

8    the owner himself, Your Honor.

9              THE COURT:  Okay.  All right.  So the first thing --

10   so that deals with that.  So I'll want a -- I'll want to know -

11   - to me, it just strikes me off the cuff that it seems

12   reasonable that you would get a copy of it.  But if that's not

13   what the law provides, I'm happy to say he doesn't get those.

14   So I would ask for some additional briefing on that.  And I'll

15   summarize all of this at the end.  You don't -- I know that you

16   all will be nervous to make sure...

17             So we've already identified all the summonses.  And

18   let me just say, everybody have a seat.  You all can answer

19   from the seated position.  I want to...

20             Why do you want the order of memorandum authorizing

21   the investigation?

22             MR. FLACK:  Because one of their objections is that

23   we haven't been able to articulate why the things they are

24   seeking may not be relevant.  And our position is we don't know

25   what your investigation is, so we can't talk to the relevance

 1   of it.  I assume there's some sort of document that says this

 2   is what we're investigating.  And then we can compare that with

 3   the summons and decide whether -- or argue whether the things

 4   they're seeking really relate to what they say they're

 5   investigating.

 6         THE COURT:  All right.  I don't know that -- I don't

 7   know that I'm inclined to have them turn over the memorandum

 8   authorizing the investigation.  IRS shall identify all other

 9   persons who have had access to or been given copies of the

10   records?  Is there anybody outside of the IRS or the DOJ that

11   has been given access to them?

12         MR. MENDOZA:  Not that I know of, Your Honor.

13         THE COURT:  Is that correct?

14         MS. JAMES:  That's correct.  No --

15         THE COURT:  Okay.

16         MS. JAMES:  -- no other --

17         THE COURT:  You can keep your seat.  Like I said,

18   everybody can keep your seat.  I know it's hard for lawyers,

19   but I promise you, I'm not going to -- I'm going to get

20   offended.  I'm less concerned about how you deliver than what

21   you deliver, as far as information.

22         So, now that we know it's all law enforcement, IRS

23   and law enforcement, or DOJ.  Is that correct?

24         MS. JAMES:  Correct.

25         THE COURT:  All right.  So that answers that

1    question.  That's on the record.

2              MR. FLACK:  To be clear, so it has been turned over

3    to the DOJ?

4              THE COURT:  Oh, I'm considering him part of the DOJ.

5    I mean, he's the U.S. Attorney, so...

6              MR. FLACK:  Okay.

7              MR. MENDOZA:  But I do have a quick clarification,

8    Your Honor.  And I --

9              THE COURT:  All right.

10             MR. MENDOZA:  I think it's important to note that Mr.

11   Andrade is under indictment in California.  He's being

12   prosecuted by the U.S. Attorney's office out there.  I'm with

13   main justice; I'm in the tax division.

14             THE COURT:  Okay.

15             MR. MENDOZA:  I don't know -- I have no knowledge

16   that any documents in this case have been shared with the

17   prosecution.  I don't know, so I just wanted to be clear --

18   that that's on the record.

19             THE COURT:  And I don't know that I feel like it's

20   appropriate for me to say what all branches of the Government.

21   I thought your concern was, has it been shown to anybody

22   outside of the Government, as opposed to which branch of the

23   Government or what people working within the Government have

24   been provided a copy.

25             MR. FLACK:  No, it's actually -- we're concerned

1    about the government too because we're concerned that it could

2    be an end run around the court in California that's got

3    (indiscernible).

4            THE COURT:  You're just -- are you just trying to

5    figure out if you've got another criminal investigation pointed

6    at your client?

7            MR. FLACK:  That, among other things, yes.

8            THE COURT:  Well, I mean, defense attorneys always

9    want to know the answer to that.  And a lot of times they're

10   not able to find out until they get the charging document.

11   Right?

12           MR. FLACK:  Understandable.  We'd like to know who

13   all's got these documents.

14           THE COURT:  So --

15           MR. FLACK:  And let me say, Your Honor, there's a

16   provision -- I mean, there's a form that's submitted with the

17   exhibits that they fill out and provide to people when they're

18   provided to other branches of the Government.  It's

19   (indiscernible) -- it cites 12 U.S.C. 3412(a).

20           THE COURT:  Okay.

21           MR. MENDOZA:  (indiscernible)

22           MR. FLACK:  (indiscernible)

23           THE COURT:  No, no.  She's talking about it.  Go

24   ahead.

25           MS. JAMES:  Judge, the last two pages of the bank

1    summonses are for if you transfer records to another Government

2    agency.  The second to the last page, you will send to the

3    Government agency, and just like notice the very last page, you

4    will send to the client or the taxpayer.  That has not

5    happened.  There has been no transfer to other government

6    agencies of the bank summons or the records.

7            THE COURT:  All right.  So you can provide me with

8    authority that tells you that they need to disclose to you

9    whether or not they've given it to law enforcement or somebody

10   else.  But my understanding is that you routinely don't find

11   out until you get a copy of the charging instrument, whether

12   it's an information or an indictment, and when you're under

13   investigation.  So...

14           MR. FLACK:  Oh, maybe I misunderstood.  I thought you

15   just said that they haven't provided it to anyone.

16           THE COURT:  She -- subject to that.  But what I'm

17   talking about is from this point going forward.  So, my

18   understanding is -- so, with that having -- if he was under

19   investigation by the FBI in Washington. DC or anybody, the IRS

20   in Michigan, whatever, would that have been covered by that

21   form that you just talked about?

22           MS. JAMES:  If they sought the records that I had,

23   yes.  I would have filled out the form, sent the records to

24   them, sent them notice that they received these records that

25   are provided from this summons.

1          THE COURT:  And I don't even know if this is an

2    appropriate agent, but if the FBI, for example in Michigan,

3    said we'd like to copy of those documents, he would be

4    notified?

5          MS. JAMES:  He will be notified.

6          THE COURT:  Okay.  All right.  The IRS shall notify

7    all recipients of any summonses.  That they should not provide

8    any documents in response to any summons until further order of

9    this Court.  So you're talking about the remaining banks that

10   have received copies of summonses?

11         MS. JAMES:  Yes.

12         THE COURT:  Or is there anybody?

13         MR. FLACK:  If there are (indiscernible) still

14   looking to respond to the summons, we'd rather they didn't

15   until the Court rules.

16         THE COURT:  All right.  So, this gets me back to what

17   happens if we didn't have time limits issues.  Just say you

18   gave this to Chase Bank two weeks ago.  Within a week, they've

19   objected.  So, what typically happens?  Like, what does Chase

20   Bank do?  Wait for a ruling on the motion to quash or...?

21         MS. JAMES:  Correct.  Correct, Your Honor.

22         THE COURT:  So I don't know that I've got a motion to

23   quash.  Do we know the universe -- we know the universe of

24   summonses.  We just identified those, right?  So what is

25   remaining?  What financial institutions are we waiting for

1    documents from?  I didn't think there were any left.

2              MS. JAMES:  There aren't.

3              THE COURT:  So there aren't any left?

4              MR. FLACK:  That's fine.  I just didn't know that.

5              THE COURT:  Okay.  And like I said, these are all

6    representations of officers of the Court.  You know, I can put

7    somebody under oath, but I don't think that's necessary.  I

8    think that everybody agrees that this is a record.  And so 5,

9    your Request Number is, I guess, moot at this point.  And now

10   that we have -- can we establish, are you now communicating

11   through his attorney, like, if there's any bodices that need to

12   be provided?  Are you able to send them, not to the 222 Suite,

13   but to the attorney?

14             MS. JAMES:  Yes, sir.  Right.

15             THE COURT:  And that's what you want, right?

16             MR. FLACK:  Yes.

17             THE COURT:  Okay.  Number 6, the IRS shall sequester

18   all records received in response to any summons, and such

19   documents shall not be reviewed by anyone pending further order

20   of the Court.  Well, I don't know that that -- I mean, what's -

21   - if there's an investigation going on, what are we...?

22             MR. MENDOZA:  Oh.

23             THE COURT:  Like I said, I'm trying to put us in the

24   position that we would have been if he'd have gotten initial

25   notice.  Chase provided those documents.  One question -- so, I

1  think it is probably reasonable; I think I'm going to ask for

2  some expedited briefing on whether or not he gets copies of

3  them.  And then once I rule on that then -- they can stay

4  sequestered until I rule on that order, which I'll do quick,

5  one way or the other.  I assume that both sides will do a good

6  job of informing me of the remedies and what the scope of what

7  somebody -- this new to me.  Okay?

8          MR. FLACK:  Yeah.

9          THE COURT:  And so I need to be educated on it.  So,

10  if the IRS has all of those documents -- is there anything

11  impending that you can't sit tight for a couple of weeks?

12          MR. MENDOZA:  No, Judge.

13          THE COURT:  Okay.  And is that plenty of time for you

14  to get me the authority that they're not entitled to copies or

15  they are entitled to copies?

16          MR. MENDOZA:  Absolutely, Your Honor.

17          THE COURT:  Okay.  And is that enough for you?

18  Because they're going to sequester them in the meantime.

19          MR. FLACK:  I'm fine with that.  My only issue is

20  I've got a trial coming up in the beginning of May.  And if

21  this gets -- as I'm kind of buried getting ready for that, if

22  we could push it to, say, the second or third week of May,

23  after --

24          THE COURT:  Well, I mean, so I'll ask -- Ms. James?

25  It's James, right?

```
 1              MS. JAMES:  Correct.

 2              THE COURT:  All right.  Sorry.  Is it Agent James?

 3    Is that the appropriate title?  Okay.  All right.  Agent James,

 4    so, from a timing perspective, I don't want to step on anything

 5    that you have going on.  How much time, I guess, can you give

 6    to have those -- because you can still use them.  You can still

 7    conduct your investigation.  This just sequesters them so that

 8    they're not getting distributed in the meantime?

 9              MS. JAMES:  I'm flexible with whatever you need.

10              THE COURT:  That May timeframe works?

11              MS. JAMES:  That's perfect.

12              THE COURT:  All right.  So that works?  So, we'll

13    come up with a briefing scheduled at the end that makes sure

14    that we accommodate your trial schedule and the needs of Agent

15    James.  Okay.

16              Movants are awarded their attorney's fees.  You know,

17    I'll carry that.  I'm not really inclined to award attorney's

18    fees.  Like I said, a lot of this is -- given kind of the

19    interesting way that we got here, you know, getting some of

20    this relief is probably what he's really interested in.  Is

21    that correct?

22              MR. FLACK:  Yes, Your Honor.

23              THE COURT:  All right.  And damages.  What -- I guess

24    I didn't see a damage provision in the statute.

25              MR. FLACK:  There's a provision, and I think it says
```

 1   you get $100, no matter what, plus whatever other damages the

 2   Court deems appropriate --

 3               THE COURT:  Okay.  All right.  Well, we'll -- I'll

 4   carry that as well and address that, to the extent that it

 5   becomes necessary.

 6               All right.  So that hits all of the things in here.

 7   I kind of short-circuited your arguments on what happened, but

 8   I think I did that because I was -- I was less interested on

 9   how we got here as opposed to what to do going forward.

10               But at this point, I don't have anything set for the

11   rest of the day.  It's 2:30.  So both of you can talk as much

12   as you want.  Does, I guess, the framework that I've got work

13   for the Government?

14               MR. MENDOZA:  Yes, Judge.

15               THE COURT:  And for the defense?

16               MR. FLACK:  Yes, Your Honor.

17               THE COURT:  All right.  So I'll go through these.

18   First off, does anybody want to, I guess, do a more fulsome

19   argument?  I don't want to rush anybody out of here.  I just

20   kind of wanted to cut to the chase of the relief that we were

21   getting to today.

22               MR. FLACK:  I think we're okay.

23               THE COURT:  Right.  And I mean, I've read everything.

24   I'm familiar with it.  And it was a lot, so...  But I read it

25   all.  Does the Government have anything that you wanted to add?

1          MR. MENDOZA:  I can do an argument, Judge, that I do
2    want to add.  And so I'm happy to do that really quickly.  It
3    will take long.
4          THE COURT:  Sure.  Go ahead.
5          MR. MENDOZA:  Thank you, Your Honor.  May it please
6    the Court.  The question before the Court, at least on the
7    notice issue, Judge, is did the United States, through Agent
8    James, substantially comply with the Right to Financial Privacy
9    Act when mailing out notice of the September summonses to
10   what's been defined as the 222 Suite.  And in getting there and
11   answering that question, the text of the statute does not
12   impose on the Government any obligation to go out and find some
13   more recent address, some new address, or even to confirm that
14   the address was in fact delivered.
15          The text of the statute says, "Mail notice to last
16   known address."  That's what Ms. James went by and that's what
17   she did.  And I do want to emphasize, Judge, that Ms. James is
18   not doing a tax audit.  She's not doing a tax examination.  And
19   she's told me that she doesn't have access to tax return data.
20   So it's not like she could have went and pulled, you know, the
21   movant's most recent tax returns and seen what address they had
22   on file.  She didn't have that information.  She's doing an
23   examination pursuant to the Bank Secrecy Act.
24          She's also told me that previously she's tried to
25   schedule an interview with Mr. Andrade on multiple occasions,

```
 1   and those kept on getting rescheduled, and it never happened.

 2   And so the circumstances surrounding Ms. James mailing notice

 3   to the 222 Suite included her not having, you know, access to

 4   tax return information, her not being able to get an interview

 5   with Mr. Andrade, and her using an address that previously

 6   worked for her, the 222 Suite.

 7            And the record is clear, nobody -- not my friend Mr.

 8   Flack or anybody else -- ever told Ms. James that the address

 9   she had on file, the 222 Suite, was incorrect.  And they knew

10   about that since at least July of 2023, and they never said

11   anything, despite many opportunities to do so.  And so I'd ask

12   the Court to deny the motion to quash, at least the September

13   summonses, on that basis.

14            As far as the May summonses, Judge, goes, you know,

15   our position is that we have received documents via the May

16   summonses.  Those have not been looked at.  Those are in a

17   Ziplock -- or in a -- you know, in a sealed envelope and

18   they're stored away.  We're happy to destroy them.  We're happy

19   to throw them away.  And so, in light of that, our position is

20   that the motion to quash the May summonses is moot.

21            THE COURT:  So, what -- so all the documents, as I

22   understand it, there's been compliance with those summonses,

23   right?  I mean, you've received everything?

24            MS. JAMES:  Yes.

25            THE COURT:  So, I mean, quashing it, it's kind of too
```

```
 1    late, right?  They've already -- it's not really a question of
 2    quashing.  It's a question of whether or not we're disgorging
 3    the Government of it.  Isn't that right?
 4             MR. MENDOZA:  I think that's right, Judge.
 5             MR. FLACK:  Yes.
 6             THE COURT:  Right.  I mean, so, I mean there's
 7    nothing to quashing anymore.  The indictment has been complied
 8    with.  I'm sorry, not the indictment -- the summons -- I use
 9    summons in criminal context along with indictments a lot, so I
10    apologize.  The summonses have been complied with, so there's
11    nothing to quash anymore.  It is that right?
12             MR. MENDOZA:  That's our position, Judge.
13             THE COURT:  And do you agree with that?
14             MR. FLACK:  As far as I know.  I don't know --
15             THE COURT:  Right.  Well, I mean, we've got those
16    representations and you agreed that those were sufficient,
17    right?  So we're -- I mean, there's nothing really to quash
18    anymore.  That's not before me.
19             MR. FLACK:  Yeah.  Yes.
20             THE COURT:  Well, I mean, no, it's your motion.  If
21    you want to move to quash something, I need to know what it is.
22             MR. FLACK:  Well, I don't know technically whether if
23    something's been complied with, can you quash it and tell them
24    to return them?  I would think the Court could deny --
25             THE COURT:  Well, I mean, before the Court is still
```

```
 1    whether or not we would disgorge them.  But like I said, it's
 2    more a function of finding out whether or not you're going to
 3    get copies.  You're asking me to quash summonses based on
 4    notice that they eventually would have gotten to your client.
 5    Like I said, assume that they had served him, what would be
 6    your basis to quash the summons?
 7              MR. FLACK:  Well, we would argue that it's not
 8    relevant to the investigation.
 9              THE COURT:  But you don't know what they are
10    investigating.
11              MR. FLACK:  Exactly.  That's why we asked for the
12    order or memo or whatever it is that tells us what the
13    investigation is.
14              THE COURT:  So, but, you know, when you typically
15    don't get those things, you know, what are -- how do we resolve
16    that?
17              MR. FLACK:  I think the Court has the power to order
18    them to give me that --
19              THE COURT:  All right.  So that would be something
20    that you can --
21              MR. FLACK:  -- as a matter of discovery, if nothing
22    else.
23              THE COURT:  All right.
24              MS. JAMES:  If --
25              MR. MENDOZA:  Judge, and I -- I'm sorry.  Please go
```

1    ahead.

2              THE COURT:  Go ahead.

3              MS. JAMES:  I just -- I mean, if he's worried about

4    the scope of my examination, the examination is of ABTC Corp.

5    as a virtual currency dealer -- exchange, rather.  It was a

6    six-month scope period that I was looking into for the Bank

7    Secrecy Act to make sure he was in compliance with the Bank

8    Secrecy Act.  That's pretty much the scope of the examination.

9              THE COURT:  All right.

10             MR. MENDOZA:  And, Judge, unless the Court has any

11   more questions, I'm happy to answer any questions about our

12   briefing.

13             THE COURT:  No.  Like I said, I was kind of going

14   down these.  So, I guess just to make a clear record, I'd ask

15   the parties to kind of confer and draft this up into an order.

16   Because I think we've reached agreement on just about

17   everything, which is really my goal in these situations.  I

18   want to try to bring as much resolution where the parties agree

19   to the things as much as possible, and then the ones that I

20   still need to make decisions on, I'll ask for supplemental

21   briefing on.

22             MR. MENDOZA:  Absolutely.

23             THE COURT:  So, the first one is the IRS shall

24   disclose all summonses and subpoenas that is now -- are you

25   with me?  All right.  The IRS shall disclose all summonses.

1   We've agreed that it's everyone that has been served and that

2   he already knows about them, right?

3            MR. FLACK:  (indiscernible)

4            THE COURT:  All right.  So then Number 1 is moot, on

5   the proposed order that was sent from the Plaintiff.  Number 2

6   is the IRS shall provide to Mr. Andrade copies of all records

7   received in response.  That's going to be subject to

8   supplemental briefing, whether or not typically -- and I'm

9   calling him a target.  Is that the right word?  He's not a

10  target.  You're saying Mr. Andrade's not a target?  Whatever he

11  is, the subject of the investigation.

12           MR. MENDOZA:  I think that's right, yeah.

13           THE COURT:  I know these may be loaded terms that I

14  don't want to accidentally use.  But whether or not somebody in

15  Mr. Andrade's shoes would typically be legally entitled to get

16  copies of those.  That's a subject for briefing.

17           Number 3, the IRS shall provide the order of

18  memorandum.  That was something -- the scope of the

19  investigation was what you just articulated on the record.  Is

20  that right Agent?

21           MS. JAMES:  Yes.

22           THE COURT:  Okay.  So that one is now moot.  Number

23  4, the IRS shall identify all other persons who have had access

24  to it.  My understanding is, on the record, that it has been

25  stipulated that no one outside the Government --

1          MS. JAMES:  (indiscernible)

2          THE COURT:  -- has been provided and that no other

3    agency.  What did you say, Ms.?

4          MS. JAMES:  No other Government agencies have been

5    provided the records that were provided --

6          THE COURT:  Okay.  So that one has been addressed.

7    Number 5, the IRS shall notify all recipients of any summons

8    that they should not provide any documents.  That is moot

9    because there are no pending document requests.

10          Number 6, the IRS shall sequester all records

11    received in response to any summons.  And when I -- so, my

12    ruling on that is that they will be sequestered, subject to

13    Agent's continued investigation, but they won't be provided

14    pending resolution of the briefing that's coming.

15          And then I am carrying the motion for attorney's fees

16    and for damages.  That hits all of the areas.

17          So, how much time do you need to do your principal

18    brief?

19          MR. MENDOZA:  I can do it in seven days, Judge.

20          THE COURT:  Okay.

21          MR. MENDOZA:  How quickly would you like it?

22          THE COURT:  No, I mean, it's up to you.  Seven days

23    is -- I was going to give you two weeks --

24          MR. MENDOZA:  I --

25          THE COURT:  -- but seven days may get it where he's

```
 1    quicker.  So, Mr. Flack, are you -- are you needing additional
 2    time before your --
 3              MR. FLACK:  Yes.  Seven days if it's being
 4    (indiscernible).  I would love to have, like, May 16?
 5              THE COURT:  Okay.  So, you can have up to two weeks.
 6    And then, which is -- what is that, Kelly?  The 17th?
 7              CLERK:  Yes.
 8              THE COURT:  So, no later than April 17th for the -- I
 9    was going to say DOJ.  What are you?
10              MR. MENDOZA: DOJ Tax Division.
11              THE COURT:  You're main justice, right?
12              MR. MENDOZA:  Yes, Judge.
13              THE COURT:  All right.  So the DOJ's brief will be
14    due no later than April 17th?
15              MR. MENDOZA:  Yes, sir.
16              THE COURT:  And then the response will be due no
17    later than May 16th.  All right?
18              MR. FLACK:  That would be very helpful.
19              THE COURT:  And then any reply briefs are subject to
20    me ruling in the interim.  So, if you're going to get them, get
21    them quick.  So, I saw lots of communication going on over
22    there.  Are there additional issues that we need to address?
23              MR. FLACK:  Can I have just one minute?
24              THE COURT:  Go ahead.
25              MR. ANDRADE:  Judge, in response to what Ms. James
```

1    stated, Judge, okay, with all due respect, she is correct that

2    she did something to my prior attorney -- oh, I'm sorry, he's

3    still my attorney, Christopher Ray, requesting that I go ahead

4    and sit for an interview.  And in that, he did send that, but

5    how this all started, Your Honor, was that I was being

6    threatened to sell my assets.  I said no.  And the threat

7    included an IRS investigation.  That --

8         THE COURT:  Who made that threat?  Somebody not

9    related to the Government?

10         MR. ANDRADE:  Not a Government employee --

11         THE COURT:  Okay.

12         MR. ANDRADE:  -- Jack Abramoff.

13         THE COURT:  Okay.

14         MR. ANDRADE:  Okay.  At that point, I filed a

15    treasury complaint case, trying to figure out how the

16    investigation got opened, because I take Mr. Abramoff very

17    seriously, as I have reason to.  And if you follow my

18    California case, you'll realize why.

19         At that point, though, when Ms. James requested

20    documents from us, it was way off, Your Honor, because she also

21    requested documents relating to any complaints that I have

22    filed with Government agencies.

23         THE COURT:  Right.  So, all of that kind of --

24         MR. ANDRADE:  -- get it, but where it gets at, Your

25    Honor, is that she made a statement claiming that we never

1    responded to her for her to go out -- for us to get documents

2    for her to make me go and, you know, sit through an interview -

3    -

4              THE COURT:  Right.

5              MR. ANDRADE:  -- when in response, we did.  We just

6    asked her under what legal authority -- my attorney asked her

7    for what legal authority does she have to request from us under

8    a BSA Act to go out there --

9              THE COURT:  Right.

10             MR. ANDRADE:  -- and ask for copies of complaints

11   that I've made with Government agencies?

12             THE COURT:  All right.  So, hold on a second.  Those

13   are all issues that are not really before me.

14             MR. ANDRADE:  (indiscernible)

15             THE COURT:  What I have done for purposes of today

16   and trying to craft the resolution -- I understand...  Look, I

17   understand that you're feeling a lot of stress related to this

18   incident.  You need to understand that the ruling that I

19   crafted today assumed good faith on behalf of both parties

20   beforehand that you have been willing -- ready, willing and

21   able to provide information, and that the IRS has been ready,

22   willing and able to give you notice.  Okay?  That was my

23   presumption on both sides.  Because, quite frankly, it doesn't

24   impact this schedule.  And what we're doing with the documents

25   in the meantime.

```
 1              So you need to understand, I don't have anything to

 2    do with this investigation.  I don't have any criminal case.

 3    All I have is just this request for documents.  And so it

 4    didn't impact my decision making one way or the other, because

 5    what I wanted to do was presume good faith on both sides.

 6    Okay?

 7              All right.  So, if the two parties could confer and

 8    submit a proposed order that outlines the agreement?  I think

 9    it's safer, given the history of the case for there to be a

10    signed order.  And to the extent you can't agree, then I will

11    deal with that.  But that way everybody will know that their

12    bases are covered.  All right?

13              MR. ANDRADE:  That sounds great, Judge.

14              THE COURT:  Anything further?

15              MR. MENDOZA:  No.

16              MR. FLACK:  Thank you, Your Honor.

17              THE COURT:  All right.  Well, I appreciate you all

18    coming in.

19              MR. MENDOZA:  Thank you, Judge.

20              THE COURT:  You bet.

21              MR. FLACK:  Thank you, Judge.

22              (Hearing adjourned at 3:42 PM)

23

24                              * * * * *

25
```

```
 1                    C E R T I F I C A T I O N

 2

 3       I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  April 12, 2024
```