Case 4:24-mc-00248   Document 41   Filed on 08/07/24 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
August 08, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROWLAND MARCUS ANDRADE and ABTC CORP., | § § § § | |
| Movants, | § § | |
| v. | § § | Misc. Action No. 4:24-MC-00248 |
| UNITED STATES DEPARTMENT OF THE TREASURY and INTERNAL REVENUE SERVICE, | § § § § § | |
| Respondents. | § § | |

## ORDER ON MOTION TO QUASH

Rowland Marcus Andrade and his company, ABTC Corp. (collectively, the "Movants"), filed this action seeking to quash two sets of third-party summonses issued by the Internal Revenue Service ("IRS") and Department of the Treasury to JP Morgan Chase that sought the Movants' bank records. (*See* Dkt. No. 1). The Court previously made rulings on a number of contested issues and left two issues unresolved subject to supplemental briefing. (*See* Dkt. No. 25). The Court held:

1) The Movants' request that "[t]he IRS shall disclose to Movants all summonses, subpoenas, or request of any kind served on any financial institutions seeking records of Mr. Andrade or any entities associated with him, including but not limited to ABTC Corp., along with all evidence of any notice to Andrade or the entity relating to same" is DENIED as MOOT;

2) *The Movants' request that "[t]he IRS shall provide to Mr. Andrade copies of all records received in response to any of the summonses, subpoenas, or requests" shall be resolved after receipt of supplementary briefs pursuant to the briefing schedule that the Court has set;*

3)    The Movants' request that "[t]he IRS shall provide to Mr. Andrade the order or memorandum authorizing the investigation pursuant to which the summonses were issued" is DENIED as MOOT;

4)    The Movants' request that "[t]he IRS shall identify all other persons (including all government agencies) who have had access to or been given copies of any of the [United States District Court Southern District of Texas ENTERED May 23, 2024 Nathan Ochsner, Clerk 2] records reference[d] above, including the date(s) of such access or provision of such copy(ies) and the records accessed or copied" is DENIED as MOOT;

5)    The Movants' request that "[t]he IRS shall notify all recipients of any summonses that they should not provide any documents in response to any summons until further order of this Court" is DENIED as MOOT;

6)    The Movants' request that "[t]he IRS shall sequester all records received in response to any summons and such documents shall not be reviewed by anyone pending further order of this Court" is GRANTED;

7)    *The Movants' requests for damages and attorneys' fees are taken under advisement and will be subject to the briefing pursuant to the schedule established by the Court; and*

8)    The Movants' requests for quashing the May and September 2023 summonses are DENIED as MOOT.

(*Id.*) (emphasis added). The Parties have briefed the two remaining issues, and the Movants have also moved for the Court to reconsider many of the rulings in its previous Order. (*See* Dkt. Nos. 32, 33). The briefing is extensive, and the Court will first address the Movants' Motion for Reconsideration of the Order, (Dkt. No. 32), before turning to the other issues in this case.

## I.    MOTION TO RECONSIDER

Invoking Rule 60(b)(1), the Movants seek "reconsideration" of the Court's prior rulings. (Dkt. No. 32). The Movants do not precisely outline which of the eight (8)

2

holdings the Movants take issue with, but the Court discerns two challenges: the Court's holdings with respect to issues 7 and 8.

With respect to issue 7, i.e., the Movants' request for damages and attorneys' fees, the Movant's essentially ask for reconsideration on the basis that they should recover damages and fees. (*See* Dkt. No. 33 at 5–9). The Court rejects this argument because the Court never made a ruling on this matter, so there is nothing to reconsider . (*See* Dkt. No. 25 at 2).

With respect to issue 8, the Movants ask the Court to reconsider its ruling denying as moot the Movants' request to quash the May and September 2023 summonses. (Dkt. No. 33 at 3–5). As an initial matter, the Movants previously conceded that their request to quash is moot.[1] But even setting this aside, the underlying rationale for mooting the request remains the same. The Court previously determined that there was nothing left to quash because the bank had already complied with the summonses. (Dkt. No. 10 at 22). The Court explained that this had turned the question to "whether or not we're disgorging the Government of [the records produced]," which is an issue that still remains "before the Court[.]" (Dkt. No. 10 at 22–23). Now, the Movants ask the Court to reconsider its "denial" because it can still "effectuate a partial remedy" and "fashion meaningful relief" "by ordering the [IRS] to destroy or return all copies in its possession." (Dkt. No. 33 at 4–5). That is the same remedy the Court left open should the Movants

---

[1] In the April 3, 2024 hearing, the Parties both agreed that because "[t]he summonses have been complied with," "there's nothing to quash anymore." (Dkt. No. 10 at 22). In fact, when the Court opined, "[T]here's nothing really to quash anymore[,] [t]hat's not before me[,]" counsel for the Movants responded, "Yeah. Yes." (*Id.*).

3

successfully show that the Government acted unlawfully in procuring the records at issue. In sum, the Movants misconstrue the Court's prior ruling as a denial of relief. Just as was the case with issue 7, there is nothing to "reconsider" with respect to issue 8.

## II.   COMPLIANCE WITH SUMMONS REQUIREMENTS

The Right to Financial Privacy Act[2] ("RFPA") grants government authorities the power to obtain financial records pursuant to an administrative subpoena or summons, provided:

> (1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; (2) a copy of the subpoena or summons has been served upon the customer or mailed to his last known address on or before the date on which the subpoena or summons was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry[,] . . . and (3) ten days have expired from the date of service of the notice or fourteen days have expired from the date of mailing the notice to the customer and within such time period the customer has not filed a sworn statement and motion to quash in an appropriate court, or the customer challenge provisions of section 3410 of this title have been complied with.

12 U.S.C. § 3405. The financial records must also be "reasonably described." *Id.* § 3402. For customers seeking to oppose disclosure of financial records pursuant to the RFPA, the challenge procedures of the statute "constitute the sole judicial remedy available[.]" *Id.* § 3410(e). The Movants raise various contentions as to why the summonses issued by the IRS were improper.

---

[2]   This statute is not to be confused with Title 26 of the United States Code, which deals with the IRS's authority to issue summonses specifically in the context of tax investigations. *E.g.*, *Maxwell v. United States*, 876 F.Supp.2d 22, 26 (D.D.C. 2012).

4

### A.    COMPLIANCE WITH THE BANK SECRECY ACT

Despite that the summonses here were issued "in accordance with" the RFPA, (*see* Dkt. No. 3-4 at 13, 28), and in fact the very title of the Movants' motion to quash was "Motion for Order Pursuant to *Customer Challenge Provisions of the [RFPA]*," (Dkt. No. 1 at 1) (emphasis added), the Movants argue that the Government failed to comply with certain provisions of a different statute: the Bank Secrecy Act. (Dkt. No. 31 at 10–11, 18–19). The Court agrees with the Government that the Movants' briefing "repeatedly conflates the Right to Financial Privacy Act (RFPA) with the Bank Secrecy Act (BSA)[.]" (Dkt. No. 27 at 2). Courts have uniformly held that the Bank Secrecy Act does not include a private right of action. *E.g.*, *Hunter v. Navy Fed. Credit Union*, No. 3:24-CV-00788, 2024 WL 3094610, at *5 (N.D. Tex. June 20, 2024) (collecting cases). Moreover, when dealing with IRS investigations for compliance with the Bank Secrecy Act, courts have identified the RFPA as the vehicle through which "a customer may file a motion to quash an administrative summons that has been served upon a financial institution to obtain records regarding that customer." *Hernandez Tax, Inc. v. United States*, No. 2:13-MC-00020, 2014 WL 3747313, at *2 (D.N.M. June 25, 2014); *accord Martinez Colon v. Santander Nat'l Bank*, 4 F.Supp.2d 53, 59 (D.P.R. 1998) ("[T]he RFPA provides bank customers with the full extent of protection regarding a bank's divulging of financial information[.]"). For both these reasons, the Court reviews the summonses for compliance with the RFPA, not the BSA, and the Movants' invocation of the latter is unavailing.

### B.     COMPLIANCE WITH THE RIGHT TO FINANCIAL PRIVACY ACT

With respect to RFPA requirements, the Movants challenge: (1) whether the IRS provided "reasonable notice" as to the nature of the law enforcement inquiry, (2) whether the Government "reasonably described" the records sought, and (3) whether the Government complied with the "last known address" component of the service requirement.³  (Dkt. No. 31).

#### 1.     Whether the Summonses Provided "Reasonable Notice"

The Movants argue that the summonses failed to afford "reasonable notice of the nature of the inquiry." (Dkt. No. 31 at 16).  As support, they point to *Hunt v. S.E.C.*, 520 F.Supp. 580, 603 (N.D. Tex. 1981), which states that "[i]t is beyond question that a mere recitation of the government authority's statutory jurisdiction is inadequate to achieve compliance" with the "reasonable specificity" requirement of the RFPA.  But the Government did much more than offer "a mere recitation" of its jurisdiction; it identified the requesting entity—here, the IRS—and provided the statutes under which it was conducting the investigation.  (*See* Dkt. No. 3-4).  This argument therefore fails.

---

³   The RFPA states that challenges like this one may be brought by a "customer," 12 U.S.C. § 3410(a), which is defined as "an individual or partnership of five or fewer individuals, [or their] authorized representative[.]" *id.* § 3401(4)–(5).  Accordingly, corporate entities "do not have standing to challenge" a government summons under the RFPA. *Bryan v. S.E.C.*, No. 5:13-CV-00499, 2013 WL 1786023, at *3 (W.D. La. Apr. 24, 2013).  The Government does not make the argument that only Andrade himself, and not ABTC Corp., may bring a challenge under the RFPA.  In any event, the Court need not consider this argument, because the Court finds that the Government prevails on other grounds.

### 2. Whether the Records Are "Reasonably Described"

Next, the Movants appear to argue that the IRS failed "to include a detailed description of the books, papers, records, or other data required to be produced." (Dkt. No. 31 at 12). This challenge ostensibly goes toward the "reasonably described" requirement in 12 U.S.C. § 3402. But the Movants do not even try to explain how the IRS failed to do so. *Hunt* is an example of the Government inadequately describing records because it submitted "a blanket request for 'all records.'" 520 F.Supp. at 603. This case is not like *Hunt*. Here, the IRS delineated precisely what records it sought, and did so in detail. (*See* Dkt. No. 3-4). The Court thus finds that the description of the records easily satisfies this requirement.

### 3. Whether the Government Served the "Last Known Address"

Finally, the Movants challenge whether the Government satisfied the RFPA's requirement that a copy of the summonses be served to the customer's "last known address." (*E.g.*, Dkt. No. 31 at 20). The Movants argue that while the RFPA does not define "last known address," service here did not satisfy that term as it is defined in the Code of Federal Regulations. (*Id.*) (citing 26 C.F.R. § 301.6212-2). While Title 26 does provide a definition of "last known address," the same regulation also makes unmistakable that the definition only applies "whenever the term . . . is used in the Internal Revenue Code [("IRC")] or the regulations thereunder." 26 C.F.R. § 301.6212-2(c). That definition is therefore not controlling in this case where the investigation, while initiated by the IRS, deals with the Bank Secrecy Act. The Court must therefore ascertain the meaning of "last known address" in the context of the RFPA.

7

As an initial point, under the IRC, the term "last known address" has been prescribed to mean "the address that appears on the taxpayer's most recently filed and properly processed Federal tax return[.]"  26 C.F.R. § 301.6212-2(a).  However, that definition makes little sense here.  That definition applies to a statute focused on tax investigations, while in this case: (1) the investigation is based on compliance with the RFPA which, unlike the IRC, is not a tax-specific statute; (2) the investigation is unrelated to the target's tax liabilities, and (3) the investigator in fact cannot access the target's tax returns.[4]  The third point is particularly noteworthy, as it would not make sense to construe the RFPA as imposing on the Government a requirement that it cannot lawfully meet.

The term "last known address," as employed in the RFPA, thus comes before the Court without a controlling or even instructive definition.  Accordingly, the Court must interpret the text of the RFPA the same way as any other statute: according to its plain language.  *See*, *e.g.*, *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1047 (5th Cir. 2012); *In re Miller*, 570 F.3d 633, 638 (5th Cir. 2009) (stating that courts should begin interpretation of every statute with "its plain language," and "[i]f the statute is clear, the inquiry is at its end, and we enforce the statute on its terms.").  Looking then to that text, the words composing "last known address" are neither overly technical nor otherwise complicated.  Because the term "last known address" should be interpreted to be the address "last known," the

---

[4]    In the April hearing, counsel for the Government informed the Court that an IRS agent cannot access tax return data in a BSA examination, (*see* Dkt. No. 10 at 20), and the Movants apparently concede this fact, as they did not dispute it in the hearing nor in the briefing that they have since submitted.

8

corollary question is last known to whom. While the RFPA does not explicitly answer this question, the logical answer is that the statute looks to the address last known by the governmental authority that issued the summonses at issue—here, Agent James on behalf of the IRS. And in this case, the record is clear that Agent James learned of the 222 Suite address in 2021,[5] and never received any indication that the address had changed. (*See* Dkt. No. 3 at 2–4); (Dkt. No. 10 at 20–21). For purposes of the BSA investigation at hand, the 222 Suite was quite literally the address "last known" to Agent James. Moreover, arguments that the Government had a duty to ascertain a better address are unavailing,[6] as that asks the Court to read into the RFPA a heightened investigative component plainly absent from the text of the statute.

    In sum, the IRS's delivery of the summonses to the 222 Suite complied with the RFPA's "last known address" requirement. Not only so, but Section 3410 of the RFPA "requires only that a government authority must be in 'substantial compliance' with the Act," a standard pursuant to which "minor and technical violations of the Act are not a basis for denying access to a customer's records." *Hunt*, 520 F.Supp. at 603 (cleaned up). Here, even assuming that serving the 222 Suite was not in strict compliance with the RFPA, the record indicates that the Government made an earnest, calculated effort to effectuate service. (*See* Dkt. No. 3 at 2–4); (Dkt. No. 10 at 20–21). Moreover, even

---

    [5]    It is undisputed that in 2021, the Government issued a summons to the 222 Suite and the summons successfully prompted a response. (Dkt. No. 3 at 2–3).

    [6]    The Movants seem to hint that the best—and therefore proper—address would have been the address of ABTC Corp.'s registered agent, filed with the State of Texas. (*See* Dkt. No. 31 at 38).

9

assuming a lack of strict compliance, there was minimal harm done as the Movants ultimately did learn about the summonses and filed the present Motion before the Government reviewed any of the financial records, and those records have since been sequestered. (Dkt. No. 10 at 17, 26). The Court therefore finds that Agent James, and by extension, the IRS, acted in substantial compliance with the Act. Disgorgement of the records is therefore improper, and the IRS may access those records for purposes of conducting its BSA investigation.

## III. FEES AND COSTS

Having determined that the RFPA provides the framework that controls this action, and that the Government has at the very least substantially complied with the requirements, the Court rejects the Movants' requests for damages and attorneys' fees, both of which are contingent upon finding a violation of the statute. *See* 12 U.S.C. § 3417(a).

## IV. COPIES OF THE RECORDS

In addition to arguing that the Government should not be permitted to access their financial records, the Movants also contend that they "have the right to copies of" all records obtained by the IRS. (*See* Dkt. No. 31 at 16–18). In so doing, they rely on two legal authorities: the Public Information Act ("PIA")—a Texas statute—and the Freedom of Information Act ("FOIA")—a federal statute. (*Id.*).

The Movants' invocation of the PIA is dead on arrival because it is a state law providing for access to state records, and "any violation of its terms would not constitute a violation of rights secured by the Constitution or laws of the United States." *Gonzalez*

*v. Northside Indep. Sch. Dist.*, No. 5:20-CV-00926, 2020 WL 5640459, at *5 (W.D. Tex. Sept. 22, 2020). The PIA is therefore inapplicable to the federal investigation here.

The FOIA argument fares no better. As a substantive matter, the financial records at issue would very likely be unobtainable through FOIA because they ostensibly fit into one of the statute's exceptions: "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4). But even if FOIA was an option, procedurally the way to invoke FOIA is to submit a request in accordance with the relevant agency's published rules. *Id.* § 552(a)(3)(A). In fact, submitting a proper FOIA request is a required step of the administrative remedies process before a litigant may bring the matter to federal court. *E.g.*, *Voinche v. F.B.I.*, 999 F.2d 962, 963 (5th Cir. 1993) (per curiam) ("[FOIA] requires exhaustion of administrative remedies prior to seeking judicial review."). The Movants here do not claim to have submitted a FOIA request. Therefore, for multiple reasons, their reliance on FOIA is misplaced.

Ultimately, neither authority is pertinent to this case, and the Court agrees with the Government that no "state law, [FOIA], or any other law somehow provides Movants with the relief requested here." (Dkt. No. 27 at 6). The Court rejects all of the Movants' arguments with respect to their claim to copies of records produced in response to the summonses.

### V.     CONCLUSION

In light of the foregoing analysis, the Court finds that the IRS may review the records at issue in its possession but may only use the information contained therein for

11

the limited purpose of its stated investigative scope: ascertaining the Movants' compliance with the Bank Secrecy Act. The Movants' request for a court order directing the IRS to destroy or return all copies of the records at issue in its possession is **DENIED**, and the Movants' request for copies of those records is **DENIED**. The Movants' request for damages and attorneys' fees is **DENIED**. The Clerk of Court is **DIRECTED** to close this miscellaneous case.

It is SO ORDERED.

Signed on August 7, 2024.

*Drew B. Tipton*
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**